# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMALGAMATED TRANSIT UNION, LOCAL 1729,<br><br>        Plaintiff,<br><br>v<br><br>FIRST GROUP AMERICA INC. and FIRST STUDENT, INC.,<br><br>        Defendants. | 2:15-cv-806 |

## MEMORANDUM OPINION

Plaintiff, Amalgamated Transit Union, Local 1729 ("Local 1729" or "Union"), has brought this action to confirm an arbitration award entered February 11, 2015, under Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185(a). Pending before the Court is DEFENDANTS' MOTION TO STAY filed by First Group America Inc. ("FGA") and First Student, Inc. ("First Student").[1] ECF No. 20. Local 1729 filed a response in opposition to the motion. ECF No. 25. Accordingly, the motion is ripe for disposition.

**I.    Background**

Local 1729 and First Student have been locked in this contentious labor dispute for more than a year, during which time it has wound its way through arbitration and several bouts at the National Labor Relations Board ("NLRB"), where it is still pending. The Court will recount the background of the dispute – drawn from the parties' filings, the arbitration decision, and the NLRB Regional Director's decision – in greater detail below.

---

1.     First Student, and not FGA, is the signatory to the collective bargaining agreement with Local 1729, so, for convenience, the Court will refer only to First Student throughout this Memorandum Opinion.

1

A. **The Dispute**

Historically, First Student operated two facilities that are relevant to the parties' dispute. The Frankstown facility, which First Student owns, was staffed with members of Local 1729 and serviced First Student's contracts with Penn Hills and Gateway School Districts, and the Rankin facility, which First Student leased, was staffed with members of Teamsters Local 205 and serviced First Student's contracts with Woodland Hills and the City of Pittsburgh School Districts. In the spring of 2013, First Student lost its contract with Gateway. As a result, in July 2013, it decided to close the Rankin facility and move the work that had been done there to the Frankstown terminal. Under the terms of the Teamsters' CBA with First Student, the Teamsters-represented employees were permitted to "follow the work" to the Frankstown terminal. Thus, throughout 2013-2014 school year, Local 1729 employees and Teamsters employees both worked out of the Frankstown facility, but the Local 1729 employees still only serviced routes for Penn Hills and the Teamsters employees still only serviced routes for Woodland Hills and the City of Pittsburgh. While each group of employees worked under one roof, each had its own managers, bidding procedures, and seniority lists.

In April 2014, First Student lost its contract with Penn Hills, and the Local 1729 employees who had been assigned to the Penn Hills routes were laid off. Those employees were, however, given the option to maintain their jobs at the Frankstown terminal, provided that they became members of the Teamsters. Approximately 30 former members of Local 1729 elected to take this option. Around the same time, First Student secured 59 additional routes from Woodland Hills, which it assigned to the Teamsters-represented employees. Accordingly, at the start of the 2014-2015 school year, First Student employed 121 drivers and monitors at the Frankstown terminal, 79 of whom had continuously been represented by the Teamsters; 31 of

whom were former ATU members; and 13 of whom were new hires.

  B. **Arbitration Proceedings**

Claiming that its laid-off members should have been recalled and assigned the 59 additional Woodland Hills routes, Local 1729 filed a grievance against First Student on June 11, 2014. The parties were unable to settle the grievance, so it was submitted to arbitration. Arbitrator Christopher Miles issued an award sustaining the grievance on February 11, 2015. ECF No.1-3 According to the arbitrator, the additional routes constituted "new work" – not work that the Teamsters employees had previously done and to which they were entitled under the terms of their CBA with First Student – and any "new work" should have been given to Local 1729 employees under the terms of the recognition clause in the First Student-ATU CBA, since Local 1729 was designated as "the sole collective bargaining agent at the Frankstown Terminal." *Id.* at 14. As a remedy, the arbitrator directed First Student "to cease and desist from violating Article 1 [i.e., the union recognition clause] and the laid off ATU employees shall be recalled in seniority order for the additional work at the Frankstown Terminal, and each affected employee shall be made whole for all lost wages, benefits, and seniority." *Id.* at 15.

  C. **NLRB Proceedings**

First Student refused to comply with the arbitration award. Instead, on June 15, 2015, it filed a petition for an election ("RM petition") with Region 6 of the NLRB at case 06-RM-165166, claiming that Local 1729 and the Teamsters had presented competing claims for representation of the employees at the Frankstown facility. That same date, First Student filed a unit clarification ("UC") petition with the Regional Director at case 06-UC-154144, asserting, as relevant here, that the employees at the Frankstown terminal who were previously represented by Local 1729 were "accreted" into the unit represented by the Teamsters.

3

Following a hearing, NLRB Regional Director Nancy Wilson issued a decision addressing both petitions on September 4, 2015. ECF No. 22-3 at 1-2. Regional Director Wilson began by rejecting Local 1729's request to defer to the arbitration award because, as she put it, the NLRB "does not defer to arbitration awards concerning representation issues such as the ones involved herein, including those concerning questions of accretion and unit clarification." *Id.* at 9. Regional Director Wilson went on to determine that the NLRB's accretion doctrine was inapplicable because there was an expansion of the existing Teamsters-represented unit, not an accretion of workers from one bargaining unit into another unit. *Id.* at 35-37. With respect to the RM petition, Regional Director Wilson concluded that

> no question concerning representation exists as to the drivers and monitors whom [First Student] employs at its Frankstown facility, as the work that was previously performed by ATU Local 1729 drivers and monitors ceased to exist at the Frankstown terminal effective June 30, 2014, when [First Student] lost its contract with the Penn Hills School District. Additional routes that [First Student] secured from Woodland Hills School District following its loss of the Penn Hills contract were given to the drivers and monitors represented by Teamsters Local 205, consistent with the historical division of work according to school district. The number of former ATU-represented employees hired for additional Woodland Hills routes were too few to create a question concerning representation. Rather, the extra Woodland Hills work merely resulted in an expansion of the existing Teamsters-represented unit.

*Id.* at 6-7.

Regional Director Wilson reiterated later in her decision:

The accretion doctrine is all the more inapplicable herein because the work that the former ATU-represented drivers and monitors performed ceased to exist when the Penn Hills School District canceled its contract for the Employer's transportation services. While the ATU notes that neither of the parties' respective collective-bargaining agreements contains language designating the work according to school district, the indisputable fact remains that the parties' long-time practice was to divide and assign work based on the school district that each union's members handled prior to the facility merger . . . . Further, the issue of representational predominance within the two represented groups is moot, where the work of ATU Local 1729 ceased to exist with the termination of the Penn Hills contract.

4

*Id.* at 36-37.

On October 9, 2015, Local 1729 filed a request for review of the Regional Director's decision, which is pending before the NLRB. ECF No. 23-5. Soon thereafter, First Student filed an unfair labor practice charge with the NLRB at case 06-CB-162952, in which it "alleg[ed] that Local 1729's prosecution of this action has the unlawful objective of interfering with the [sic] Regional Director Wilson's Decision in violation of Section 8(b)(1)(A) and (b)(2) of the Act." ECF No. 19 at 5.

### D. District Court Proceedings

Local 1729 initiated this action on June 19, 2015 (four days after First Student initiated the NLRB proceedings). First Student and FGA filed their answer on July 28, 2015, and asserted, as an affirmative defense, that the NLRB's decision on First Student's UC and RM petitions, once final, would take precedence over the arbitration award and thus the arbitration award could not be confirmed. ECF No. 9 at 4. On October 14, 2015, Local 1729 filed a motion for judgment on the pleadings. ECF Nos. 16. In its motion, the Union argued that First Student waived any arguments, including its Supremacy Doctrine argument, that could support vacating the arbitration award. That being so, the Union urged that the only thing the Court could do is issue an order confirming the award. On November 4, 2015, First Student filed a response in opposition to Local 1729's motion for judgment on the pleadings. ECF No. 19. That same day, First Student also filed its motion to stay, with a brief in support, arguing that this case should be stayed pending the outcome of the ongoing NLRB proceedings. ECF Nos. 20-21. "[I]f NLRB denies Local 1729's request for review or affirms the Regional Director's decision as to cessation of Local 1729's representational rights," they argue, "the arbitration award Local 1729 seeks to enforce will be rendered unenforceable" under the Supremacy Doctrine. ECF No. 21 at

5

2. Thus, according to First Student, the Court should allow the NLRB proceedings run their course before ruling on Local 1729's motion for judgment on the pleadings.

## II. Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Thus, "a court may hold one lawsuit in abeyance to abide the outcome of another [proceeding] which may substantially affect it or be dispositive of the issues." *Bechtel Corp. et al. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO et al.*, 544 F.2d 1207, 1215 (3d Cir. 1976). "Courts within this Circuit have considered three factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues; (2) the status of the litigation; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Taylor v. Winnecour*, No. 12CV1846, 2013 WL 136499, at *2 (W.D. Pa. Jan. 10, 2013), *aff'd sub nom.*, *In re Taylor*, 519 F. App'x 108 (3d Cir. 2013).[2]

## III. Discussion

To decide whether this case should be stayed, the Court must consider whether the Regional Director's decision (if the Board denies Local 1729's request for review) or the Board's decision (if the Union's request is granted) will take precedence over the arbitrator's award under the Supremacy Doctrine. If so, deference to the NLRB proceedings is appropriate. *See Sheet Metal Workers Int'l Ass'n v. Murphy Const. Co.*, 191 F.3d 909, 910 (8th Cir. 1999) (citations

---

2. The legal standard set forth in Local 1729's response to the motion to stay is not correct. The main case Locals 1729 cites for the legal standard, *Hilton v. Braunskill*, 481 U.S. 770, 776-77 (1987), addresses situations where a party seeks to stay an order pending appeal to the circuit court, not situations where a party seeks to temporarily stay litigation pending the resolution of a proceeding in another tribunal that might bear on the outcome in the case in which the stay is sought. As a result, the Court will not address Local 1729's arguments regarding (1) the likelihood of success on the merits, and (2) whether either of the parties will suffer irreparable harm if a stay is not granted, as these requirements are not relevant to deciding First Student's motion.

omitted).

The Supremacy Doctrine originates from the Supreme Court's decision in *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261 (1972). In *Carey*, the petitioner union, which represented "all production and maintenance employees" at the plant in question, filed a grievance claiming that employees represented by another union were performing "production and maintenance work" in violation of the CBA. 375 U.S. at 263. The employer "refused to arbitrate on the ground that the controversy presented a representation matter for the National Labor Relations Board." *Id.* at 262-63. The Supreme Court disagreed. As it explained, there are "two different, though related, species" of inter-union disputes: work assignment disputes and representational disputes.[3] *Id.* The former involves "a controversy as to whether certain work should be performed by workers in one bargaining unit or those in another[.]" *Id.* The latter involves "a controversy as to which union should represent the employees doing particular work." *Id*. While the Supreme Court acknowledged that the line between these two types of disputes can sometimes be difficult to draw, it made clear that, no matter how "the dispute is considered," there is "no barrier to use of the arbitration procedure." *Id.* at 270-72. "If it is a work assignment dispute, arbitration conveniently fills a gap and avoids the necessity of a strike to bring the matter to the Board. If it is a representation matter, resort to arbitration may have a pervasive, curative effect even though one union is not a party."[4] *Id.* at 272. The Supreme Court

---

3. The *Carey* Court referred to work assignment disputes and representational disputes as subsets of jurisdictional disputes. However, "[t]here is general agreement now that a representation case is raised when two unions seek to represent the same employees but neither union demands that the employees be replaced if it prevails. A jurisdictional dispute, on the other hand, is presented when each union seeks to place its own members in the performance of particular work." Douglas Leslie, *The Role of the NLRB and the Courts in Resolving Union Jurisdictional Disputes*, 75 Colum. L. Rev. 1470, 1487 (1975). The Court adopts that usage herein.

4. Although the NLRB can decide jurisdictional disputes under § 10(k) of the National Labor Relations Act, § 10(k) can only be invoked through the filing of a § 8(b)(4)(D) unfair labor practice charge after one of the competing unions goes on strike or threatens to strike. *Carey*, 375 U.S. at 268. "In resolving a jurisdictional dispute, the NLRB is not bound by the applicable collective bargaining agreements. Rather, 'the Board may consider and

clarified in dictum, however, that "[s]hould the Board disagree with the [arbitrator], by ruling, for example, that the employees involved in the controversy are members of one bargaining unit or another, the Board's ruling would, of course, take precedence[.]" *Id.*

"Courts have relied on this *Carey* dictum in refusing to enforce arbitration awards" when "there is a conflict between the Board's ruling and an arbitrator's [award]." *Teamsters Union Local No. 115, of Philadelphia, Pa., Affiliated With Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. DeSoto, Inc.*, 725 F.2d 931, 936 (3d Cir. 1984) (citations omitted); *see also Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 898-99 (3d Cir. 2013) ("It is well-established that where an arbitration award squarely conflicts with a later Board ruling, the arbitration award must yield to the Board's decision."). Such conflicts often arise in the context of § 10(k) proceedings when an arbitrator assigns disputed work to one union while the Board assigns it to a rival union. *See, e.g., id.* at 899 (citations omitted) ("[A] section 10(k) award nullifies a contrary arbitration award."); *Hoeber for & on Behalf of NLRB v. Local 30, United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, AFL-CIO*, 939 F.2d 118, 122 n.4 (3d Cir. 1991) ("Under the 'supremacy doctrine,' which bars an arbitrator from making an award inconsistent with an NLRB determination, a 10(k) decision must take precedence over an arbitral award."); *J.F. White Contracting Co. v. Local 103 Int'l Bhd. of Elec. Workers*, 890 F.2d 528, 529 (1st Cir. 1989) ("It is well-established law that courts are not to enforce an arbitration award that conflicts with a § 10(k) determination."). "The appropriate remedy" under such circumstances "is to

---

weigh all factors that it deems relevant in light of its experience and common sense.'" *Sea-Land Serv., Inc. (Pac. Div.) v. Int'l Longshoremen's & Warehousemen's Union, Locals 13, 63, & 94*, 939 F.2d 866, 872 (9th Cir. 1991) (quoting *J.F. White Contracting Co. v. Local 103 Int'l Bhd. of Electrical Workers*, 890 F.2d 528, 530 (1st Cir. 1989)). Meanwhile, representational disputes, over which the Board has primary jurisdiction, can be resolved through a § 8(a)(5) unfair labor practice proceeding or a unit clarification proceeding, initiated by either the union or the employer. *Id.*

vacate the conflicting arbitration award." *E.P. Donnelly, Inc.*, 737 F.3d at 899 (citations omitted). Thus, the "threshold question in this case" is whether the arbitrator's decision and the Regional Director's decision actually conflict with one another. *See DeSoto, Inc.*, 725 F.2d at 936.

From First Student's perspective,

> [t]he conflict is manifest. Arbitrator Miles' decision assumed Local 1729's continuing representational rights – he could not otherwise have written his decision. Regional Director Wilson found that Local 1729's representational rights had ceased to exist, so that the award of the Woodland Hills routes was simply an expansion of the Teamsters Local 205 unit.

ECF No. 6.

For its part, Local 1729 argues that the arbitration award and the Regional Director's decision do not conflict because the arbitration award "does not decide a representational issue." ECF No. 25 at 8. According to First Student,

> the arbitrator merely decided a contract interpretation issue; the arbitrator found First Student in violation of a specific provision of the parties' labor agreement and ordered the affected employees reinstated and made whole. Once the affected employees are reinstated and made whole, the definition of the unit and the particular union that represents these employees may ultimately be determined [by] the NLRB. What bargaining representative is deemed appropriate is left entirely unfettered to the NLRB. However, no reasonable reading of the award can result in a finding Arbitrator Miles defined the unit or decided what union should represent these employees.

*Id.*

First Student's description of the purported conflict strikes the Court as less than accurate – or at least imprecise. First of all, it is not clear what First Student means when it says that the arbitrator must have "assumed" Local 1729's "continuing representational rights." With respect to whom? The laid-off ATU-represented employees? The Teamsters-represented employees to whom the Woodland Hills routes were assigned? The laid-off former ATU-represented employees who joined the Teamsters in order to keep working at the Frankstown terminal? As

9

the Court understands it, Local 1729 did not actually raise a representational issue in the arbitration. *See* Carey, 375 U.S. at 263 (defining representational dispute as "dispute as to which union should represent the employees doing particular work"). Rather, its only claim was that the laid-off employees it represented were entitled to the work at issue. To resolve that question, the arbitrator did not have to assume anything about a continuation of the Local 1729's representational rights. Rather, the arbitrator only had to review the terms of the parties' CBA. *See Int'l Union of Operating Engineers, Local Union No. 12, AFL-CIO v. Sim J. Harris Co.*, No. CV-92-3609-SVW(GHKX), 1992 WL 464126, at *4 (C.D. Cal. Sept. 30, 1992) ("Disagreements over whether or not work is covered under a collective bargaining agreement are inherently contractual in nature, and are thus particularly within the province of the arbitrator.").

Similarly, Regional Director Wilson did not make a finding that Local 1729's "representational rights had ceased to exist," as First Student contends. Once again, this raises the question: with respect to whom? The only employees whose representational rights were at issue (i.e., the "petitioned-for" employees) were the Teamsters-represented employees and the 30 or so laid-off ATU employees who joined the ranks of the Teamsters to keep their jobs at the Frankstown terminal. ECF No. 22-3 at 23-25. Certainly, under Regional Director Wilson's decision, Local 1729 no longer had the right to represent the latter group of employees, as they previously did. But that does not mean that Local 1729's representational rights ceased as to the laid-off employees who did not become Teamsters members.

More to the point, though, First Student's argument ignores that the crux of Regional Director Wilson's decision was her finding that the "[a]dditional routes that [First Student] secured from Woodland Hills School District following its loss of the Penn Hills contract were given to the drivers and monitors represented by Teamsters Local 205, consistent with the

10

historical division of work according to school district." This was not a representational finding; the Regional Director did not cite to any Board "policies or standards" in support of it. Instead, this finding was based on an interpretation of the parties' CBAs and their historical practices and understandings. *See id.* at 36 (explaining that although "neither of the parties' respective [CBAs] contains language designating the work according to school district, the indisputable fact remains that the parties' long-time practice was to divide and assign work based on the school district that each union's members handled prior to the facility merger"). From this finding flowed the Regional Director's conclusions that (1) no accretion had occurred because the employees sought to be accreted (i.e., the former ATU employees who had joined the Teamsters to keep their jobs at the terminal) were already part of the now-expanded Teamsters-represented bargaining unit, and (2) "[t]he number of former ATU-represented employees hired for the additional Woodland Hills routes were too few to create a question of representation" between ATU and the Teamsters. While these certainly could be construed as findings on representational issues, they were ancillary to the Regional Director's finding on what, for all intents and purposes, was a work assignment or jurisdictional question.

With that said, while the Court does not agree with the manner in which First Student has framed the issue, it also cannot agree with Local 1729's position on the matter. Contrary to what Local 1729 suggests, "[a]n arbitrator's award need not be in *direct conflict with a representational decision* of the NLRB or be *primarily representational in nature* to run contrary to the supremacy doctrine; but, rather, it need only be 'logically inconsistent [with an NLRB decision] . . . when a representational issue is at stake.'" *California Pac. Med. Ctr. v. Serv. Employees Int'l Union*, No. C 06 4685 SC, 2007 WL 81906, at *7 (N.D. Cal. Jan. 9, 2007), *aff'd*, 300 F. App'x 471 (9th Cir. 2008) (quoting *A. Dariano & Sons*, 869 F.2d at 517) (emphasis

added). Thus, although the arbitrator's decision was based on an interpretation of the CBA and did not purport to decide a representational question, that alone does not render the Supremacy Doctrine inapplicable. This is so because representational issues were at least tangentially at stake in the arbitration. Furthermore, the Court cannot agree that "no reasonable reading of the award can result in a finding Arbitrator Miles defined the unit or decided what union should represent these employees." Just the opposite: by awarding the Woodland Hills routes to the ATU-represented employees, the arbitrator, of necessity, determined that ATU, not the Teamsters, had the right to represent the employees servicing those routes, pursuant to the terms of the First Student-ATU CBA. And that decision is certainly "logically inconsistent" with the decision of the Regional Director, inasmuch as the arbitrator awarded Local 1729 the very same work that the Regional Director found was properly assigned to the Teamsters.

Still, the Court has some misgivings about whether the Supremacy Doctrine applies. The proceedings before the Regional Director were representational proceedings (though, as noted, the Regional Director's key finding was not necessarily a representational finding). As a result, the Regional Director's "sole function" was "to ascertain and certify the name of the bargaining representative, if any, that has been designated by the employees in the appropriate unit." *United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada, AFL-CIO*, 721 F.3d 678, 696 (D.C. Cir. 2013) (quoting *Gas Serv. Co.*, 140 NLRB 445, 447 (1963)). It was not the Regional Director's responsibility "to decide whether employees in the bargaining unit are entitled to do any particular work . . . ." *Id.* That means that Regional Director Wilson's finding as to which union was entitled to the Woodland Hills routes was not truly a jurisdictional or work assignment order or award, as First Student describes it at various places in its filings. *See Carey*, 375 U.S. at 269. That being so, this case does not present

as straightforward of an application of the Supremacy Doctrine as in those cases involving clear conflicts between arbitration awards and § 10(k) awards. If that were so – if the Board had awarded the Teamsters-represented employees the work in a § 10(k) proceeding – then there would be no question that the NLRB's award would trump the arbitrator's award. But does the same hold true even though the issue was decided in a representational proceeding and not a § 10(k) proceeding?

The parties have not directed the Court's attention to any authority from the Third Circuit or elsewhere that directly addresses this question. Nor has the Court been able to find any authority directly on point. The Court's research has, however, revealed that courts outside our Circuit have not interpreted the Supremacy Doctrine as narrowly as Local 1729 would like. As one district court has explained, "the scope of the supremacy doctrine is broader than NLRB rulings on purely representational issues. Rather, its primacy extends to factual determinations that are essential to its rulings on representational issues." *Bevona v. Field Bridge Associates*, No. 90 CIV. 5191 (RJW), 1993 WL 498042, at *4 (S.D.N.Y. Dec. 1, 1993), *aff'd*, 29 F.3d 622 (2d Cir. 1994) (citing *Central Valley Typo. Union No. 46 v. McClatchy Newspapers*, 762 F.2d 741 (9th Cir. 1985)). Under the reasoning of these cases, which the Court finds persuasive in the absence of additional guidance from the parties, a final decision of the NLRB, even if not strictly representational in nature, will take precedence over a conflicting arbitration award, so long as the Board's (or Regional Director's) "contractual interpretation was an essential part of its adjudicative process on a representational issue within its primary jurisdiction." *McClatchy Newspapers*, 762 F.2d at 749.

Regional Director Wilson's finding as to which union was entitled to the Woodland Hills routes seems to fit this bill. Her finding on that issue was necessary to her finding that the

13

addition of the former ATU employees merely resulted in an expansion of the existing Teamsters-represented bargaining unit and not an accretion and for her conclusion that there was no question concerning representation. And, as already noted, her finding is inconsistent with the arbitrator's finding, such that one of them cannot stand. Therefore, as First Student argues, if the Regional Director's decision is affirmed or the Board denies review, the Supremacy Doctrine will apply. Since this Court would "be unable to enforce the arbitration award" in favor of Local 1729 under those circumstances, "'[a]ppropriate deference to the jurisdiction and expertise of the [NLRB] . . . require[s] a stay of judicial proceedings.'" *Murphy Const.*, 191 F.3d at 910 (quoting *Northern Calif. Dist. Council of Hod Carriers, Bldg. & Constr. Laborers v. Opinski*, 673 F.2d 1074, 1075 (9th Cir. 1982)).

Local 1729 argues, however, that a stay should not be entered because First Student waived its Supremacy Doctrine defense by failing to move to vacate the arbitration award within 30 days, as required under Pennsylvania law. *See* 42 Pa. Cons. Stat. § 7314(b); *Serv. Emp. Int'l Union, Local No. 36, AFL-CIO v. Office Ctr. Servs., Inc.*, 670 F.2d 404, 409 (3d Cir. 1982) ("conclud[ing] that actions to vacate or confirm an arbitration award under section 301 should be governed by the relevant state statute of limitations"). The Court disagrees. The Third Circuit Court of Appeals has indeed held that "[a]n employer's failure to raise defenses to the enforcement of an arbitration award in a timely motion to vacate or modify the award bars it from raising them thereafter." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Neville Chem. Co.*, 298 F. App'x 209, 211 (3d Cir. 2008) (citing *Serv. Employees Int'l Union Local 36 v. City Cleaning Co.*, 982 F.2d 89, 93 (3d Cir. 1992)). However, no court has "applied this rule when the award, if enforced, would undermine a contrary [NLRB decision]." *Int'l Longshoremen's & Warehousemen's Union, Local 32 v. Pac.*

14

*Mar. Ass'n*, 773 F.2d 1012, 1016 (9th Cir. 1985). In fact, the only court that appears to have addressed this precise issue has held that the waiver rule does not apply when it comes to the Supremacy Doctrine. *See id.* There are at least two sound reasons why that is so.

First, applying the waiver rule in this context would run directly contrary to the *Carey* Court's recognition that the "[t]he superior authority of the Board may be invoked at any time." 375 U.S. at 372. In other words, the Board's decision on a representational issue, no matter when it is rendered, "'will effectively void the preceding award.'" *Sea-Land Serv., Inc. (Pac. Div.) v. Int'l Longshoremen's & Warehousemen's Union, Locals 13, 63, & 94*, 939 F.2d 866, 873 (9th Cir. 1991) (quoting *Pac. Mar. Ass'n*, 773 F.2d at 1020). "This result occurs even without any action by either the loser of the arbitration or the NLRB." *Id.* In that way, the Supremacy Doctrine is unlike traditional defenses to the enforcement of arbitration awards: it deprives district courts of the *power* to enforce arbitration awards that conflict with decisions of the NLRB. *See, e.g.*, *Local Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Inc. v. Jacobs Transfer Co.*, 407 F. Supp. 125, 132 (D.D.C. 1976) (explaining that "the Court would be powerless to enforce the arbitration awards" that conflict with decisions of the Board).

Second, as first Student contends, it could not have raised the Supremacy Doctrine argument in a timely motion to vacate because the NLRB's decision will not be final until well after the 30-day limitations period expired.[5] *See Office Ctr. Servs.*, 670 F.2d at 409 (emphasis added) (explaining that defenses *which could have been raised in motions to vacate*" cannot be

---

5.      Contrary to what the Local 1729 suggests, First Student is not arguing "that it could not have appealed the arbitration award within the limitations period because [it was] unaware of the representational issue . . . ." ECF No. 25 at 4. Rather, it is arguing that it could not have raised the Supremacy Doctrine within 30 days of the issuance of the arbitration award because the NLRB's decision was not, and is still not, final. ECF No. 23 at 9. No matter when First Student became aware of the representational issue, it was permitted to invoke the superior authority of the NLRB, whose decision would take precedence over the arbitrator's in the event of a conflict. *Carey*, 375 U.S. at 272.

raised in confirmation proceedings); *id.* at 412 (emphasizing that "*if a defendant has important defenses to an arbitration award* he should raise them within the period prescribed for actions to vacate"). Accordingly, the Court concludes that First Student has not waived its Supremacy Doctrine defense.[6]

## IV. Conclusion

For all of the foregoing reasons, First Student's motion to stay will be granted, and this case will be stayed until the conclusion of the NLRB proceedings in cases 06-UC-154144 and 06-RM-154166. The parties shall jointly notify the Court via CM/ECF within seven (7) days of the conclusion of the NLRB proceedings. The Court will not rule on ATU 1729's motion for judgment on the pleadings until it receives such notification. If, at such time, the parties see the need for additional briefing, they shall file a request for same when they notify the Court as to the status of the NLRB proceedings.

McVerry, S.J.

---

6. None of the cases upon which Local 1729 relies convince the Court otherwise. Contrary to what Local 1729 suggests, none of these cases involved "the exact issue" before this Court. Only *Service Employees International Union, Local 36 v. City Cleaning*, 982 F.2d 89 (3d Cir. 1992), merits any discussion because it is the only case that is arguably analogous to this case. In that case, the employer filed unfair labor practice charges, which were subsequently settled with approval of the NLRB. *Id.* at 91. Before that charge was settled, a grievance committed issued an award in favor of the union, which the union then filed a federal action to enforce. *Id.* Before the district court, the employer argued that the award was unenforceable because of the settlement of the unfair labor practice charges. *Id.* at 93. The Court of Appeals held that this argument was waived because the employer failed to raise it in a timely motion to vacate the grievance committee's award. *Id.* The circumstances in *City Cleaning*, however, differed from those here in several important ways. Most notably, representational and jurisdictional issues were not at stake as they are here. In addition, there was no final NLRB decision with which the grievance committee's award could conflict, as there is here.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMALGAMATED TRANSIT UNION, LOCAL 1729,<br><br>           Plaintiff,<br><br>v<br><br>FIRST GROUP AMERICA INC. and FIRST STUDENT, INC.,<br><br>           Defendants. | 2:15-cv-806 |

## ORDER OF COURT

**AND NOW**, this 24th day of November, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that this case is **STAYED** pending the resolution of the proceedings before the National Labor Relations Board at case numbers 06-UC-154144 and 06-RM-154166. It is **FURTHER ORDERED** that the parties shall jointly notify the Court via CM/ECF within seven (7) days of the conclusion of the NLRB proceedings. The Court will not rule on ATU 1729's motion for judgment on the pleadings until it receives such notification. If, at such time, the parties see the need for additional briefing, they shall file a request for same when they notify the Court as to the status of the NLRB proceedings.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc:     **Joseph S. Pass, Esq.**
        Email: jsp@jpilaw.com
        **Terrence H. Murphy, Esq.**
        Email: tmurphy@littler.com