# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMALGAMATED TRANSIT UNION, LOCAL 1729,<br><br>          Plaintiff,<br><br>          v.<br><br>FIRST GROUP AMERICA INC. and FIRST STUDENT, INC.,<br><br>          Defendants. | 2:15-cv-806 |

## MEMORANDUM ORDER

This Memorandum Order is the culmination of a contentious labor dispute between the parties that has been winding its way through arbitration, administrative proceedings at the NLRB, and this Court for almost two years. The saga began on June 11, 2014, when ATU Local 1729, which was then the exclusive bargaining representative for drivers at First Student's Frankstown terminal, filed a grievance claiming that its members should have been assigned bus routes for Woodland Hills School District that were instead assigned to members of Teamsters Local 205.[1] On February 11, 2015, the arbitrator issued an award sustaining the Union's grievance and ordered First Student "to cease and desist from violating Article 1 [the union recognition clause] and the laid off ATU employees shall be recalled in seniority order for the additional work at the Frankstown Terminal, and each affected employee shall be made whole for all lost wages, benefits, and seniority." ECF No. 1-4 at 15. Rather than complying with the award, First Student filed a pair of petitions with the NLRB, asserting in an RM Petition that ATU 1729 and the Teamsters had presented competing claims for representation of the employees at the Frankstown terminal and in a UC Petition that the former ATU employees at the Frankstown terminal, who were rehired for the Woodland Hills routes, were accreted into a

---

1. For the full background, see the Court's November 24, 2015, Memorandum Opinion. ECF No. 27.

unit represented by the Teamsters.

Four days after First Student filed those petitions, ATU 1729 initiated this action to confirm the arbitration award under Section 301 of the Labor-Management Relations Act.

On September 4, 2015, the NLRB Regional Director issued a decision on First Student's petitions. The Regional Director concluded that the NLRB's accretion doctrine was inapplicable and that no question of representation existed "as to the drivers and monitors whom [First Student] employs at its Frankstown facility, as the work that was previously performed by ATU Local 1729 drivers and monitors ceased to exist at the Frankstown terminal effective June 30, 2014, when [First Student] lost its contract with the Penn Hills School District." ECF No. 22-3 at 6-7. These determinations were based, in part, on the Regional Director's finding that the "[a]dditional routes that [First Student] secured from Woodland Hills School District following its loss of the Penn Hills contract were given to the drivers and monitors represented by Teamsters Local 205, consistent with the historical division of work according to school district." *Id.* at 7.

Meanwhile, ATU 1729 filed its now-pending motion for judgment on the pleadings, asking the Court to confirm the arbitration award. First Student filed a response in opposition to ATU 1729's motion, while also filing a motion to stay this case pending the conclusion of the proceedings before the NLRB, which had then yet to rule on the Union's request for review of the Regional Director's decision. First Student's motion to stay was premised on the potential applicability of the Supremacy Doctrine derived from *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261 (1972), which, First Student argued, would bar the enforcement of the arbitration award insofar as it conflicted with the final decision of the Board. The Court granted First Student's motion and, in doing so, tentatively agreed with First Student's position regarding the

Supremacy Doctrine.

On January 14, 2016, the NLRB denied ATU 1729's request for review, thereby rendering the Regional Director's decision final. Shortly thereafter, the NLRB filed a motion to intervene in this case, which the Court granted over the Union's objection. After the Court lifted the stay, the parties and the NLRB were given the opportunity to file supplemental briefs on the applicability of the Supremacy Doctrine.

Which brings us to now. Having been fully briefed, ATU 1729's motion for judgment on the pleadings is finally ripe for disposition.

The Court previously expressed some misgivings about whether the Supremacy Doctrine should apply. Upon further reflection and consideration of the recent round of briefing, however, the Court concludes that it cannot enforce the arbitration award because it conflicts with the final decision of the NLRB.

In *Carey*, the Supreme Court reaffirmed the federal policy in favor of arbitration, holding that even arguably representational matters, over which the NLRB has primary jurisdiction, must be submitted to arbitration. 375 U.S. at 272. The Supreme Court clarified in dictum, however, that "following an arbitrator's resolution of a representational issue, if 'the Board disagree with the arbiter, by ruling, for example, that the employees involved in the controversy are members of one bargaining unit or another, the Board's ruling would, of course, take precedence . . . .'" *Chauffeurs, Teamsters & Helpers ATU 776 Affiliated With Int'l Bhd. of Teamsters, AFL-CIO v. N.L.R.B.*, 973 F.2d 230, 233 (3d Cir. 1992) (quoting *Carey*, 375 U.S. at 272). "Courts have relied on this *Carey* dictum in refusing to enforce arbitration awards . . . in those cases in which there is a conflict between the Board's ruling and an arbitrator's [award]." *Teamsters Union ATU No. 115, of Philadelphia, Pa., Affiliated With Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen &*

*Helpers of Am. v. DeSoto, Inc.*, 725 F.2d 931, 936 (3d Cir. 1984) (citations omitted).

The conflict here could not be clearer. On the one hand, the arbitrator found that the disputed routes should have been assigned to the ATU 1729 drivers in accordance with the terms of the recognition clause in the parties' CBA. "Albeit these additional routes were from the same school district as the work that was moved from the Rankin facility," the arbitrator explained, "Appendix A, Section 8 [of the ATU-First Student CBA] did not identify the Teamsters work as any and all routes for any particular school district and it did not include any additional routes that may be acquired after the move." ECF No. 1-4 at 14. On the other hand, the Regional Director found that "deferral to [the arbitrator's] award [was] inappropriate" and went on to reach the exact opposite conclusion, finding that the new Woodland Hills routes were properly assigned to the Teamsters drivers. In support of this finding, the Regional Director explained,

> [w]hile . . . neither of the parties' respective collective-bargaining agreements contains language designating the work according to school district, the indisputable fact remains that the parties' long-time practice was to divide and assign work based on the school district that each union's members handled prior to the facility merger.

ECF No. 23-3 at 36.

To be sure, the Court formerly expressed uncertainty about whether the Regional Director's finding as to which union was entitled to the work was truly representational, such that it is entitled to deference under the Supremacy Doctrine. As the above-quoted portion of the Regional Director's decision makes clear, her finding was based on her interpretation of the competing CBAs and First Student's past practices, not the Board's policies and procedures for deciding representational questions. To a certain extent, this uncertainty remains. Ultimately, though, whether the Regional Director's finding was purely representational is immaterial because "the scope of the [S]upremacy [D]octrine is broader than NLRB rulings on purely

4

representational issues. Rather, its primacy extends to factual determinations that are essential to its rulings on representational issues." *Bevona v. Field Bridge Associates*, No. 90 CIV. 5191 (RJW), 1993 WL 498042, at *4 (S.D.N.Y. Dec. 1, 1993), *aff'd*, 29 F.3d 622 (2d Cir. 1994) (citing *Central Valley Typo. Union No. 46 v. McClatchy Newspapers*, 762 F.2d 741 (9th Cir. 1985)). As long as the Board's "contractual interpretation was an essential part of its adjudicative process on a representational issue within its primary jurisdiction," its decision takes precedence. *McClatchy Newspapers*, 762 F.2d at 749. As this Court previously noted, the Regional Director's "finding [as to who was entitled to the disputed routes] was necessary to her finding that the addition of the former ATU employees merely resulted in an expansion of the existing Teamsters-represented bargaining unit and not an accretion and for her conclusion that there was no question concerning representation." ECF No. 27 at 13-14. Thus, this finding must trump the arbitrator's contrary conclusion.

But wait, says the Union, the NLRB's decision and the arbitrator's award are not actually inconsistent with each other; rather, each can be implemented and given its full effect. ECF No. 37 at 8. More specifically, ATU 1729 claims that it "does not take issue with the Board's contractual interpretation finding that Teamsters Local 205 members should be assigned the work in question." *Id.* at 8. It says it will fully respect this aspect of the NLRB's order. At the same time, ATU 1729 argues that because the arbitrator did not decide which union should represent the affected employees, First Student can simply recall them in accordance with the arbitration award and they will, upon recall, be members of the Teamsters. "This fully respects and otherwise complies with the Board's decision and at the same time gives fidelity to the award." *Id.*

The Court does not see how this could be possible. Contrary to what the Union suggests,

the arbitrator not only ordered First Student to recall the laid-off ATU 1729 drivers, but he also ordered First Student to cease and desist from violating the union recognition clause in the parties' CBA. As the arbitrator explained, the First Student-ATU CBA "provide[d] that all the work out of the Frankstown Terminal belongs to the ATU." ECF No. 1-4 at 13. So, as the NLRB argues, "to [effectuate the arbitrator's award], First Student would have to replace Teamsters-represented drivers with ATU-represented drivers and, presumably, bargain with the ATU concerning the terms and conditions of work for those drivers[.]" ECF No. 36 at 3. That would hardly do justice to the "Board's decision that the Teamsters rightfully represents the drivers who work those additional Woodland Hills routes." *Id.*

ATU 1729 fares no better with its argument that the back-pay portion of the arbitration award can be confirmed without undermining the NLRB's decision. "[T]here is no material difference between seeking work and seeking payment in lieu of work[.]" *ATU 30, United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, AFL-CIO v. N.L.R.B.*, 1 F.3d 1419, 1427 (3d Cir. 1993). "[F]orcing an employer to pay damages in circumstances such as these would violate congressional intent by penalizing that employer for merely complying with an NLRB order." *T Equip. Corp. v. Mass. Laborers' Dist. Council*, 989 F. Supp. 320, 324 (D. Mass. 1997). Thus, the Court cannot enforce the back-pay portion of the award *See ATU 30, United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, AFL-CIO*, 1 F.3d at 1427 (explaining that "a Board ruling on a representational issue" shields "the employer from liability for damages for breach of a collective bargaining agreement as long as the employer's actions were consistent with the Board's decision").

Moreover, the Court rejects ATU 1729's attempt to characterize the back-pay award as being "based, in part, upon First Student's distinct contractual commitment under the collective

6

bargaining agreement to 'guarantee' the affected employees eight (8) hours of pay," which ATU 1729 claims "is an independent contractual commitment entirely divorced from any finding made by the Board[.]" ECF No. 37 at 9. The grievance filed by the Union was not premised on the eight-hour wage guarantee, and the arbitration award cannot be read to have been based on this provision of the CBA, either. *Cf. Eichleay Corp. v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 944 F.2d 1047, 1057 (3d Cir. 1991) (concluding that the portion of an arbitration award based on breach of independent contractual duty could be enforced, while representational portion of the award could not be).

Because the arbitration award conflicts with the NLRB's finding as to which union was entitled to the Woodland Hills routes, it cannot be confirmed. Accordingly, ATU 1729's motion for judgment on the pleadings is hereby **DENIED**, and the arbitration award is hereby **VACATED**. The Clerk of Courts shall mark this case **CLOSED**. It is **SO ORDERED**, this 5th day of April, 2016.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: Joseph S. Pass
Email: jsp@jpilaw.com

Terrence H. Murphy
Email: tmurphy@littler.com

Brian M. Hentosz
Email: bhentosz@littler.com

Kevin P. Flanagan
Email: Kevin.Flanagan@nlrb.gov

Portia Gant
Email: portia.gant@nlrb.gov